UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KEITH McCOY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 2:14-cv-00355-PPS-PRC |
| ) | |
| MR. ATTHENTON, NIECEY GORE, ) | |
| Y. HOGAN, and MS. PIERSON, ) | |
| ) | |
| Defendants. ) | |

OPINION AND ORDER

*Pro se* plaintiff Keith McCoy filed multiple versions of complaints and listed tens of defendants. I carefully read McCoy's filings and determined that there are two viable claims, and these only impact some of the named defendants. I dismissed McCoy's other claims and the other defendants from the case. McCoy has now filed a letter and two motions, and this Order addresses those filings.

First, McCoy previously listed one defendant as Ms. Pearson. The summons that the United States Marshals Service attempted to serve on Pearson was returned unexecuted because Lake County Corrections denied having an employee by that name. (Docket Entry 22.) McCoy now moves to change that defendant's name in the record of this case to "Mrs. Pierson," and McCoy has filed a new summons and Form USM-285. (DE 25.) That motion will be granted, and pursuant to 28 U.S.C. § 1915(d) the United States Marshals service will be directed to effect service of process on Mrs. Pierson. (DE 25.)

Next, in a letter McCoy has stated that McCoy submitted exhibits to the Court at some point, and these exhibits might shed light on the correct spelling of the name of a defendant identified as "Mr. Atthenton." DE 4 appears to contain exhibits, so the Clerk of Court will be directed to send a copy of DE 4 to McCoy. (DE 23.)

McCoy's second pending motion is entitled "Motion to Appeal to Dismiss Defendant" but will be construed as a motion to reconsider the Order (DE 18) dismissing several defendants and claims from this case. (DE 24.) I previously found two viable claims in McCoy's complaint: one against Lake County Jail Sergeant Niecey Gore for allegedly punitively misclassifying McCoy for placement in medical segregation; and a second against jail officers who failed to take McCoy to receive medical treatment after a fight. (DE 18 at 2-4.) McCoy's current motion takes issue with the partial dismissal relating to the first claim, specifically the dismissal of named Lake County Jail medical provider staff members. McCoy seeks reconsideration of their dismissal "[b]ecause they did not remove McCoy out of medical segregation despite the fact McCoy was missclassified either." (DE 24 at 3.) My previous Order allowed the misclassification claim to go forward against only the one defendant who, according to McCoy's allegations, actually made the classification determination. Here is how I explained that decision:

> First, in allegation 1 McCoy says a lot of things, but the one that, reading liberally, states a cause of action is that Niecey Gore punitively misclassified McCoy, apparently placing McCoy in medical segregation despite the fact that McCoy's mental health evaluator had determined this was unnecessary. First, I note that it

2

> is not clear exactly what McCoy's status is or has been throughout the pendency of this civil case. McCoy seems to have been in and out of different jails over the past few years, and it's unclear when McCoy was a pretrial detainee and when (if ever) a convicted prisoner – this is relevant to the state's ability to punish McCoy, and the constitutional amendments and standards that apply. In short, "[i]ncarcerated persons are entitled to confinement under humane conditions which provide for their 'basic human needs.' . . . [For] a pretrial detainee, it is the due process clause of the Fourteenth Amendment rather than the Eighth Amendment's proscription against cruel and unusual punishment which is the source of this right. However, courts still look to Eighth Amendment case law in addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners . . . ." *Rice v. Corr. Med. Servs. (In re Estate of Rice)*, 675 F.3d 650, 664 (7th Cir. 2012) (citations omitted).
>
> It seems that at some point during the incarceration at issue in this case McCoy could have been released, which suggests pre-trial detention. (DE 13 at 47.) Assuming that was the case, the state could not punish McCoy during the September-October 2012 period at issue because McCoy had not been convicted of anything. Therefore *punitive* misclassification to the mental health area or solitary or other non-standard conditions of confinement *could* qualify as a due process violation. *See, e.g.*, *De Jesus v. Odom*, 578 Fed. Appx. 598, 600 (7th Cir. 2014). Reading the complaint liberally, this is what McCoy alleges.

(DE 18 at 2-3.)

McCoy's motion asking me to reconsider this holding will be denied for the following reasons.

In *De Jesus v. Odom*, 578 Fed. Appx. 598, 600 (7th Cir. 2014), the Seventh Circuit upheld a grant of summary judgment for defendants where the defendants did not make any decisions or were not personally involved in placement decisions leading to a prisoner's administrative segregation.

3

In Allegation 1 McCoy explains that "Deputy Wordon Niecey Gore use to force me to be housed on the Lake County Jail medical segregation holding floor, Even though I McCoy have been clerd by medical . . . . I Keith McCoy flet Deputy Wordon Niecey Gore was their to have the classifion Sergent now pull me out of the [unclear] of Inmates and place me on the medical segregation holding floor, because every since I reported her she has force me to be housed back on the Lake County Jail medical segregation holding floor. [*sic*]" (DE 13 at 6.) The common thread throughout the subsequent claims relating to misclassification is that McCoy was taken to medical segregation by guards, and not taken out of medical segregation by guards or medical personnel, but the complaint alleges that the classification decision (the misclassification decision, according to McCoy) was made by Niecey Gore. McCoy's long and exhaustive explanation of McCoy's time in medical segregation is too long to recount here. But McCoy notably writes multiple times in the complaint that one of the defendants, Douge, told McCoy"the only people he [Douge] had the power to move was those place on the floor by medical and mental health, and bein I [McCoy] was placed on the floor by the Classify Department he did not have the power to move me." (DE 13 at 18.) Later McCoy says that McCoy talked to multiple mental health staff who agreed that McCoy did not belong on the medical segregation floor but said there "was nothing they could do." (*Id.* at 22.) McCoy also says that "Mental health staff Mrs. Kristen then stated that she told the Classification Department I McCoy was cleared by medical and mental health and they placed me on the floor anyway." (*Id.* at 35.) At another point, when

4

McCoy is explaining a move to medical segregation, McCoy writes that McCoy "wonder[ed] were did Sergent Menchaca get the ok. I Keith McCoy then felt classification Sergent Menchaca must to went back down stair and got the ok from Deputy Werdon Nicecy Gore and or Deputy Werdon Niecey Gore how use to force me to be house on the Lake County Jail medical segregation holding floor . . . ." (DE 13 at 10.) And again, later, McCoy describes talking to an officer to try to get out of medical segregation because McCoy remembered that officer from when McCoy had been housed in general population, "before Classification Department Sargent Niecey Gore stated placing and froceing me to be housed on the Lake County Jail Medical Segregation holding floor." (*Id.* at 25.)

In the motion seeking reconsideration of partial dismissal McCoy elaborates: according to McCoy, staff placing people in Lake County Jail medical segregation "must be competant of a medical or mental health staff physician," and inmates may only be placed there "by proving they're medically or mentally dangerous to themselves or others." (DE 24 at 2.) Furthermore, according to McCoy, "(By LAW)" anyone placed in medical segregation must have a "7 to 14 day evaluation to prevent and insure inmates are not missclassified," progress goals must be set for such inmates, and medication must be prescribed "to those needing or requesting medication." (*Id.*) McCoy got the 7- to 14-day period, and during the evaluation McCoy told the doctor that McCoy had been cleared to not be in medical segregation, and McCoy felt that McCoy was being discriminated against because McCoy was a gay male. (*Id.* at 3.) McCoy says the doctor

5

did not move McCoy. McCoy seeks reinstatement of the complaint against various specified members of the Lake County Jail medical staff "[b]ecause they did not remove McCoy out of medical segregation despite the fact McCoy was missclassified either." (*Id.*)

So taking everything McCoy has alleged, here is what happened. There is a system set up for placement in the medical segregation area of the Lake County Jail, and McCoy was put through that process, was evaluated after the required 7 to 14 day period, and was found to be medically able to be housed with the general population. But Niecey Gore in the Classification Department ignored that finding and, despite lacking medical credentials, and intending to punish McCoy, classified McCoy as someone to be housed in medical segregation. McCoy complained about this to guards and medical personnel, none of whom went against Gore's classification decision and moved McCoy.

McCoy does not explain the basis of any power of the medical staff to go around the classification department and change prisoners' housing. This classification issue is different from the typical prisoner allegation of deliberate indifference with respect to providing medical care, and there is no basis for finding any constitutional violation based on employees' failure to ignore the classification department and move McCoy. Requiring, or even allowing, such acts in the running of a prison could lead to chaos, and would certainly undermine the orderly administration of which division of labor is a part:

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [Plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.
> . . .
> [Plaintiff's] contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, *Monell's* rule that public employees are responsible for their own misdeeds but not for anyone else's. Section 1983 establishes a species of tort liability, and one distinctive feature of this nation's tort law is that there is no general duty of rescue.

*Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009).

So if McCoy was punitively misclassified, and if that was a constitutional violation, then the responsible person is Niecey Gore, as the person who made the classification decision. Niecey Gore, as the alleged decisionmaker, is the only person McCoy can sue for the decision.

McCoy did cite to one statute, so I will address it. McCoy says that "provision of medical or optical care as provided in IC 34-6-2-38 shall be considered as a ministeral act." (DE 24 at 3.) Indiana Code section 34-6-2-38 defines public employees. Presumably McCoy is citing the statute to support an argument that employees of private

contractors providing prison health services may be sued under 42 U.S.C. § 1983. This is as true as it is irrelevant. *See, e.g.*, *Rice v. Corr. Med. Servs. (In re Estate of Rice)*, 675 F.3d 650, 670-71 (7th Cir. 2012). The claim for misclassification against the medical provider employees was not dismissed because private medical staff working in a prison cannot be used as people acting under color of law (this would not be a valid basis for dismissal). It was dismissed because they cannot be sued for misclassifying and misplacing McCoy when they did not classify or place McCoy at all.

ACCORDINGLY, the Court:

(1) **GRANTS** the plaintiff's motion to change the name of one defendant from "Pearson" to "Pierson" in this case (DE 25);

(2) **DIRECTS**, pursuant to 28 U.S.C. § 1915(d), the United States Marshals Service to effect service of process on Sgt./Mrs. Pierson, for whom McCoy has submitted a filled-in summons and USM-285 form (DE 25-1);

(3) **DIRECTS** the Clerk of Court to send to McCoy a copy of DE 4 (DE 23);

(4) **DENIES** McCoy's motion to reconsider the Order (DE 18) dismissing several defendants and claims from this case. (DE 24.)

**SO ORDERED**.

ENTERED: May 15, 2015.

/s/ Philip P. Simon
**Philip P. Simon, Chief Judge**
**United States District Court**